UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
NO. 3:18-cv-00672-FDW-DSC

| | |
|---|---|
| MIDLAND NATIONAL LIFE INSURANCE CO., )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>DIONTE M. LONG, by and through )<br>Guardian Ad Litem, TERRY SHERILL, )<br>BERNADETTE L. LIGHTNER, )<br>)<br>Defendants, )<br>)<br>)<br>THE ESTATE OF MARCELLA )<br>LIGHTNER THRASH, )<br>)<br>Third-Party Plaintiff. )<br>) | ORDER |

THIS MATTER is before the Court on Defendant Dionte M. Long's ("Defendant Long") Motion to Dismiss Crossclaims pursuant to Rule 12(b)(6) filed on May 28, 2021, (Doc. No. 30), and Third-Party Plaintiff Mary Immen, Administrator for the Estate of Marcella Thrash, ("the Estate")[1] and Defendant Bernadette Lightner's ("Defendant Lightner") Motion for Partial Summary Judgment pursuant to Rule 56 filed on June 18, 2021. (Doc. No. 35).

Having reviewed and considered the written arguments, the record, and applicable authority, and for the reasons set forth below, Defendant Long's Motion to Dismiss Crossclaims

---

[1] Maurice Lightner served as Administrator of The Estate of Marcella Thrash from April, 18, 2017, to February 9, 2021. (Doc. No. 30-2, p. 17, 26–29). A hearing officer of the Mecklenburg County Clerk of Superior Court revoked "all powers and authority issued to Maurice Lightner" since he showed "himself to be unsuitable to carry out the requirements of serving as Administrator." (Id. at 28–29.) Thereafter, the court appointed Mary Immen, a Public Administrator, as the "successor Administrator of the Estate of Marcella Thrash." (Id. at 29.)

1

is GRANTED IN PART and DENIED IN PART, and Defendant Lightner and Mary Immen's Motion for Partial Summary Judgment is DENIED AS MOOT.

## I. BACKGROUND

Marcella Lightner Thrash ("Decedent") died on April 10, 2017. (Doc. No. 1-3, p. 2). Decedent had one child, Defendant Long, and was divorced at the time of her death. (Doc. No. 30-2, p. 26). At issue in this case are the funds of Decedent's $250,000 Temporary Life Insurance Agreement ("TLIA") deposited with the Clerk of this Court by Midland National Life Insurance Company ("Midland"). The TLIA names Defendant Long as the sole primary beneficiary and Defendant Lightner, Decedent's sister, as the sole contingent beneficiary. (Doc. No. 1-1, p. 3). The parties dispute whether Defendant Long, who was charged with the murder of his mother but found Not Guilty by Reason of Insanity, is entitled to receive the TLIA funds. Since this case turns on complex factual and procedural issues at the state level, the Court finds it appropriate to describe the background in separate sections.

**a. Factual Background**

In the criminal case against Defendant Long for Decedent's death, a grand jury found that "on or about the 10th day of April, 2017, in Mecklenburg County, [Defendant Long] did unlawfully, willfully, and feloniously and of malice aforethought kill and murder Marcella Thrash." (Doc. No. 30-2, p. 4). Prior to trial, counsel for Defendant Long notified the State of North Carolina of Defendant Long's intent to offer the "Defense of Insanity and Diminished Capacity." (Doc. No. 30-2, p. 5).

Almost a month after receiving notice of Defendant Long's intent to offer the insanity defense, the State moved to question Defendant Long's capacity to proceed to trial because "the defendant [had] been diagnosed as suffering from paranoid schizophrenia and the defendant [said]

2

he was hearing voices in his head at the time of the murder." (Doc. No. 30-2, p. 6). Defendant Long "was subsequently transported to Central Regional Hospital for evaluation on April 17, 2018." (Doc. No. 30-2, p. 10). On August 1, 2018, a state court judge found Defendant Long was "mentally ill and either dangerous to self or others or in need of treatment in order to prevent further disability or deterioration" and ordered Defendant Long involuntarily committed to Broughton Hospital. (Doc. No. 30-2, p. 11).

In October of 2019, Defendant Long's counsel moved the state court to "conduct a pre-trial hearing pursuant to N.C.G.S. § 15A-959(c) to determine that the defendant was insane at the time of the offense." (Doc. No. 30-2, p. 10). Subsequently, the court found that though Defendant Long was capable to proceed to trial, Defendant Long met "the North Carolina statutory criteria for a meritorious defense of insanity at the time of the offense." (Doc. No. 30-2, p. 14). Thus, the court dismissed the criminal charge with prejudice, (id.), and the court ordered Defendant Long's automatic, involuntary commitment to a 24-hour facility. (Doc. No. 30-2, p. 15).[2]

Prior to dismissal of the criminal charge, the Estate filed a wrongful death complaint in civil court against Defendant Long on December 31, 2018—within the statute of limitations for wrongful death claims in North Carolina. (Doc. No. 30-2, pp. 34-25). The Estate served Defendant Long through Federal Express ("FedEx") at Broughton Hospital where he was staying pursuant to an order of the state court. (Doc. No. 30-2, p. 39). A "Brian Clarke" signed the FedEx receipt indicating acceptance of the package on January 2, 2019. (Doc. 30-2, p. 39). A few weeks later, Defendant Long's appointed counsel in the criminal case informed the Estate of Defendant Long's commitment to Broughton Hospital and suggested the civil matters be put on hold. (Doc.

---

[2] This Court notes the potential inconsistencies with the factual record of Defendant Long's criminal case. However, the details of the criminal case are not material for this order. The fact of primary relevance is that Defendant Long was found Not Guilty by Reason of Insanity.

3

No. 30-2, p. 36).

However, the Estate moved for Judgment by Default pursuant to Rule 55 of the North Carolina Rules of Civil Procedure. (Doc. No. 30-2, p. 27). In support, the Estate provided an affidavit of service of process by designated delivery service. (Doc. No. 30-2, p. 38). A state court order on November 13, 2019, denied the motion because of "the evident [mental] limitations of the defendant" and "the failure of the plaintiff to request the appointment of a guardian ad litem for a defendant with clear capacity issues." (Doc. 30-2, p. 41). Important to this matter, the same order established a finding that "plaintiff served the defendant at Broughton Hospital." (Doc. No. 30-2, p. 40). On November 16, 2020, the Estate filed a voluntary dismissal pursuant to Rule 41 of the North Carolina Rules of Civil Procedure. (Doc. No. 30-2, p. 42).

In addition to the wrongful death action, the Estate also filed a declaratory judgment action on December 21, 2018. (Doc. No. 30-2, p. 45). The Estate sought "a declaration that the defendant [was] barred from any recovery under these policies due to the Slayer Statute." (Doc. No. 30-2, p. 55). Although the Estate moved for a default judgment, the court denied the motion "in light of the evident limitations of the defendant Dionte Long" on November 13, 2019. (Doc. No. 30-2, p. 55). On March 16, 2021, the Estate voluntarily dismissed the declaratory action pursuant to Rule 41 of the North Carolina Rules of Civil Procedure. (Doc. No. 30-2, p. 59).

b. **Procedural Background**

Midland instituted this interpleader action on December 19, 2018, to resolve the competing claims to the proceeds of the TLIA. (Doc. No. 1). This Court received the Interpleader Deposit in the amount of $251,074.59. (Doc. No. 7, p. 1). Shortly after receiving the Interpleader Deposit, pursuant to a motion by Midland under Rule 17 of the Federal Rules of Civil Procedure, this Court appointed Terry Sherrill to serve as Defendant Long's guardian ad litem in this case. (Doc. No. 9,

4

p. 1).

Defendant Lightner, through counsel, filed an answer to the Complaint, (Doc. No. 10), in March of 2019, and Defendant Long, through his guardian ad litem, filed an answer to the Complaint, (Doc. No. 11), in April of 2019. Subsequently, this Court discharged Midland from the litigation. (Doc. No. 13). After the case remained dormant for some time, this Court allowed Defendant Lightner to amend her answer to include "crossclaims for wrongful death and declaratory judgment . . . and to join the Estate of Marcella Thrash, a necessary party" on April 29, 2021. (Doc. No. 22, Doc. No. 25).

On May 28, 2021, Defendant Long filed a Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. No. 30). On June 18, 2021, Defendant Lightner and the Estate filed a Motion for Partial Summary Judgment. (Doc. 35).

## II. STANDARD OF REVIEW

**a. Rule 12(b)(6) Motion to Dismiss**

Defendant Long moves to dismiss the Complaint for failure to state a claim for relief pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The complaining party must show in its response to the motion that the complaint contains sufficient factual allegations to support a cause of action against the Defendant.

In order to survive a 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, a plaintiff's "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads sufficient factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly,

5

550 U.S. at 556). While the Court accepts plausible factual allegations in the complaint as true and considers those facts in the light most favorable to a plaintiff in ruling on a motion to dismiss, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." E. Shore Mkts., Inc. v. J.D. Assocs. Ltd., 213 F. 3d 175, 180 (4th Cir. 2000). A court cannot "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." Venev v. Wyche, 293 F. 3d 726, 730 (4th Cir. 2002) (citations and internal quotations omitted).

**b. Rule 56 Motion for Summary Judgment**

A district court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine issue of fact exists if a reasonable jury considering the evidence could return a verdict for the nonmoving party." Blue Ridge Pub. Safety, Inc. v. Ashe, 712 F. Supp. 2d 440, 446 (W.D.N.C. 2010). For purposes of summary judgment, the Court views the pleaded facts in the light most favorable to the nonmovant. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986). Additionally, "it is noted that 'summary judgment is not appropriate when there are conflicting versions of the events giving rise to the action, or when there is no conflict about the events that occurred, but the legal significance of those events is determined by a reasonable person test.'" Ashe, 712 F. Supp. 2d at 446 (quoting Griffith v. Glen Wood Co., 646 S.E.2d 550, 554 (2007)). Summary judgment "is also inappropriate 'when issues such as motive, intent, and other subjective feelings and reactions are material, when the evidence presented is subject to conflicting interpretations, or where reasonable [persons] might differ as to the significance of any particular piece of evidence.'" Ashe, 712 F. Supp. 2d at 446 (quoting Gregorino v. Charlotte–Mecklenburg Hosp. Auth., 468 S.E.2d 432, 433 (1996)).

### III. DISCUSSION

#### a. Defendant Long's Motion to Dismiss

##### i. Wrongful Death

Defendant Long argues the statute of limitations for the wrongful death claim has expired because the state court did not acquire personal jurisdiction over Defendant Long before the Estate voluntarily dismissed the case pursuant to Rule 41 of the North Carolina Rules of Civil Procedure. (Doc. No. 30-1, pp. 14–15). Specifically, Defendant Long argues the Estate failed to effect proper service such that Rule 41's one-year savings provision did not extend the statute of limitations, and the wrongful death claim is now barred by the two-year statute of limitations. (Doc. No. 30-1, p. 17). Based on the record before it, this Court agrees.

"Actions for damages on account of the death of a person caused by the wrongful act, neglect or fault of another" expires within two years of the date of death. N.C. GEN. STAT. § 1-53(4). The savings provision of Rule 41 indicates that "[i]f an action commenced within the time prescribed therefore, or any claim therein, is dismissed without prejudice . . . a new action based on the same claim may be commenced within one year after such dismissal." N.C. R. Civ. P. 41. Thus, the "savings provision" of Rule 41 allows parties to "dismiss an action that originally was filed within the statute of limitations and then refile the action after the statute of limitations ordinarily would have expired." Clark v. Visiting Health Prof., 524 S.E.2d 605, 607 (N.C. Ct. App. 2000), disc. rev. denied, 543 S.E.2d 867 (N.C. 2000).

However, "a plaintiff must obtain proper service prior to dismissal in order to toll the statute of limitations for one year." Camara v. Gbarbera, 662 S.E.2d 920, 922 (N.C. Ct. App. 2008) (citing Latham v. Cherry, 433 S.E.2d 478, 480 (N.C. Ct. App. 1993)). Decedent died on April 10, 2017. (Doc. No. 1-3, p. 2). Therefore, the statute of limitations in this case will bar any wrongful death

7

action filed after April 10, 2019—unless a voluntary dismissal, accompanied by proper service, triggered the one-year savings provision.

Rule 4 of the North Carolina Rules of Civil Procedure governs the service of process in North Carolina. A plaintiff may serve a natural person by "depositing with a designated delivery service authorized pursuant to 26 U.S.C. § 7502(f)(2) a copy of the summons and complaint, addressed to the party to be served, *delivering to the addressee*, and obtaining a delivery receipt." N.C. R. Civ. P. 4(j)(1)(d) (emphasis added). The rule allows for an "electronic or facsimile receipt." N.C. R. Civ. P. 4(j)(1)(d).

"North Carolina courts have long recognized 'liberality as the canon of construction when interpreting the North Carolina Rules of Civil Procedure.'" N.C. Mut. Life Ins. Co. v. Stamford Brook Cap., LLC, No. 1:16CV1174, 2019 WL 4747851, at *3 (M.D.N.C. Sept. 27, 2019) (quoting Washington v. Cline, 761 S.E.2d 650, 655–56 (N.C. Ct. App. 2014). Therefore, "[t]technicalities and form are to be disregarded in favor of the merits of the case." Lemons v. Old Hickory Council, Boy Scouts of Am., Inc., 367 S.E.2d 655, 657 (N.C. 1988) (citation omitted). However, Rule 4 must still be "strictly enforced to insure that a defendant will receive actual notice of a claim against him." Grimsley v. Nelson, 467 S.E.2d 92, 94 (N.C. 1996).

The North Carolina Court of Appeals interpreted "delivering to the addressee" in two recent cases. See Hamilton v. Johnson, 747 S.E.2d 158 (N.C. Ct. App. 2013); Washington v. Cline, 761 S.E.2d 650 (N.C. Ct. App. 2014). In Hamilton, the plaintiff used FedEx to serve the defendant, who was staying at a hotel, but the concierge signed for the delivery. 747 S.E.2d at 160. Although the plaintiff could not prove the concierge qualified as a designated agent to accept service, the plaintiff, citing Rule 4(j), argued a statutory presumption exists when someone of suitable age and discretion signs the delivery. Id. at 162. However, the Court of Appeals noted,

8

since the legislature "elected not to include any statutory presumption of valid service under Rule 4(j)(1)'s methods of service of process," it could not find that service was delivered to the addressee without a showing by the plaintiff that the concierge "was an agent authorized to accept service of process on defendant's behalf." Id. at 163. Similar facts existed in Washington; except, there, the defendants filed affidavits admitting "to receiving the summonses and copies of the complaint against them as evidence of effective service of process." 761 S.E.2d at 653. The Court of Appeals concluded the defendants could not claim improper service due to their admission of receiving actual notice. Id. at 657. The Middle District of North Carolina summarized Hamilton and Washington as follows:

> Read together, the import of Hamilton and Washington appears to be that, in order to properly effectuate service by "delivering to the addressee," a plaintiff must demonstrate that the summons and complaint were either (1) signed for by the addressee or her designated agent or (2) actually received by the addressee. See 761 S.E.2d at 657; 747 S.E.2d at 162–63. This interpretation of Rule 4(j)(1)(d) helps to ensure that defendants "will receive actual notice of [the] claim[s] against [them]," Grimsley, 467 S.E.2d at 94, without permitting "[t]echnicalities" to inhibit courts from reaching the merits when there is evidence that the summons and complaint were actually received[.] Lemons, 367 S.E.2d at 657.

N.C. Mut. Life Ins. Co., 2019 WL 4747851, at *4.

The facts of this case are more similar to Hamilton than to Washington. The FedEx receipt shows the Estate served Defendant Long through designated delivery service under Rule 4(j)(1)(d). (Doc. 30-2, p. 39). Since Defendant Long did not sign for the delivery, the Estate must show either (1) Brian Clarke served as Defendant Long's designated agent or (2) Defendant Long actually received notice. The Estate does not provide evidence of either.

First, there is no evidence in the record indicating Brian Clarke is Defendant Long's designated agent. In fact, there is no evidence showing Brian Clarke is even an employee at Broughton Hospital. Second, there is no evidence indicating Defendant Long admitted to

9

receiving actual notice. Although Defendant Long's counsel for the criminal case noted receipt of a "courtesy copy" of the claim, (Doc. No. 30-2, p. 36) counsel explicitly stated he did "not represent Dionte in any of the pending civil matters" and reminded the Estate of Defendant Long's incapacitated status at Broughton Hospital. (Id.) Further, in the Motion for Entry of Default, the Estate admitted "Defendant [Long had] not filed an Answer or other responsive pleading." (Doc. No. 30-2, p. 27). Taken together, these facts do not rise to the level of actual notice presented in Washington, where the defendants filed affidavits admitting to receipt of the complaint and summons. 761 S.E.2d at 653. Therefore, the Estate failed to show proper service on Defendant Long.[3]

Defendant Long also argues the Estate "failed to comply with Rule 17 after receiving adequate notice that Dionte Long needed to have a Guardian Ad Litem appointed to represent him." (Doc. No. 30-1, p. 16). This Court notes when a plaintiff serves someone "known to him to be incompetent to have charge of his own affairs," the plaintiff must serve the natural person, *and* "a guardian ad litem who has been appointed pursuant to Rule 17." N.C. R. Civ. P. 4(j)(2)(b). This Court is concerned with Defendant Long's lack of a guardian ad litem during the civil proceedings and with the Estate's failure to serve a guardian ad litem despite knowing of Defendant Long's capacity issues. However, this Court finds the failure to properly serve Defendant Long is dispositive of the case, and, as such, the Court need not decide issues regarding the guardian ad litem.

---

[3] This Court acknowledges the state court order on the Estate's Motion for Default Judgment indicates Defendant Long eventually filed an answer to the wrongful death complaint on October 9, 2019. (Doc. No. 30-2, p. 40). However, neither party presented Defendant Long's answer. To the extent Defendant Long may have admitted actual notice in his answer, this Court notes it is the parties' burden to provide the necessary documentation to the Court, and, based on the record, there is no evidence Defendant Long admitted to actual notice. In addition, this Court acknowledges the same order states the "plaintiff served the defendant at Broughton Hospital." (Id.) However, there is no indication a state court order on a motion for default collaterally estops this Court from deciding issues regarding service; the tangential observation of the state court has no bearing on this case.

Since the Estate failed to obtain proper service prior to the dismissal, Rule 41's one-year savings provision did not apply, and the current crossclaim for wrongful death is barred by the statute of limitations. Therefore, the wrongful death crossclaim is dismissed.

### ii. Declaratory Judgment

Defendant Long also moves to dismiss the declaratory judgment action seeking to declare Defendant Long a slayer under N.C. GEN. STAT. § 31A-3(3) and federal common law.[4]

First, Defendant Long asserts the doctrine of *res judicata* estops the Estate from seeking a declaratory judgment because a Hearing Officer for Mecklenburg County Clerk of Superior Court found Defendant Long was not a slayer under N.C. GEN. STAT. § 31A-3 on February 9th, 2021. (Doc. 30-1, p. 9–12). This Court disagrees.

Under the doctrine of *res judicata*, or claim preclusion, "a prior judgment between the same parties can preclude subsequent litigation on those matters actually and necessarily resolved in the first adjudication." Covert v. LVNV Funding, LLC, 779 F.3d 242, 246 (4th Cir. 2015) (quoting In re Varat Enters., Inc, 81 F.3d 1310, 1314–15 (4th Cir. 1996). For *res judicata* to apply, the following three elements must be met: "(1) [a] final judgment on the merits in a prior suit; (2) an identity of the cause of action in both the earlier and the later suit; and (3) an identity of parties or their privies in the two suits." Pueschel v. United States, 369 F.3d 345, 354–55 (4th Cir. 2004) (citations omitted). In addition, the court should consider "whether a party knew of its claims at the time of the first action and whether the court that presided over the first suit was an effective forum to litigate the relevant claims." Q.C. v. Winston-Salem/Forsyth Cty. Sch. Bd. of Educ., No. 1:19CV1152, 2021 WL 1430697, at *4 (M.D.N.C. Apr. 15, 2021) (citing Providence Hall Assocs.

---

[4] Defendant Lightner and the Estate reference "Federal Common Law" in their amended crossclaims. However, the substance of the arguments from both sides appears to address North Carolina common law, and North Carolina law applies to this dispute.

Ltd. v. Wells Fargo Bank, N.A., 816 F.3d 273, 276 (4th Cir. 2016).

The doctrine of *res judicata* does not apply here. "[T]he cause of action in both the earlier and later suit" are not identical. Pueschel, 369 F.3d at 354–55. The state court order referenced by Defendant Long was a response to Defendant Long's petition to revoke the testamentary letters issued to Maurice Lightner. (Doc. No. 30-2, p. 28–29). In contrast, the current declaratory judgment action seeks to declare Defendant Long as a slayer under a North Carolina statute and under common law. In fact, the first suit was not a suit at all; it was a decision regarding the administration of an estate. Therefore, Defendant Long's attempt to assert claim preclusion is unpersuasive.

Second, Defendant Long asserts the declaratory judgment action should be dismissed on the merits. Defendant Long's motion is GRANTED insofar as the declaratory judgment action seeks to qualify Defendant Long as a slayer under the statute, but the motion is DENIED as to Defendant Long's qualification as a slayer under North Carolina common law.

Under North Carolina property law, a "slayer" is "deemed to have died immediately prior to the death of the decedent"—thus prohibiting the slayer from inheriting the decedent's estate. N.C. GEN. STAT. § 31A-4. Although Section 31A-3(3) lists five definitions for the term "slayer," only two definitions are significant in this case.[5] A slayer is a person who: (1) is convicted of the "willful and unlawful killing of another person", or (2) "is found by a preponderance of the evidence in a civil action brought within two years after the death of the decedent to have willfully and unlawfully killed the decedent." N.C. GEN. STAT. § 31A-3(3)(a), (d). After listing the various definitions for the term "slayer," the statute clarifies a slayer "does not include a person who is found not guilty by reason of insanity . . . of the willful and unlawful killing of another person."

---

[5] The remaining three definitions include persons who have entered guilty pleas, nolo contendere pleas, or who are juveniles. See N.C. GEN. STAT. § 31A-3(3)(b)-(c),(e).

N.C. GEN. STAT. § 31A-3.

In this case, Defendant Long is not a slayer under the statute. First, Defendant Long has not been convicted of the willful and unlawful killing of the Decedent. Second, the Estate failed to bring a successful wrongful death claim. Third, the state court found Defendant Long Not Guilty by Reason of Insanity in the criminal case. Therefore, Defendant Long is not barred from receiving the TLIA funds due to the slayer statute.

However, qualification as a slayer under the statute is not the sole obstacle preventing Defendant Long from receiving the TLIA funds. "In North Carolina, a person can be barred from receiving life insurance proceeds by: (1) N.C. Gen. Stat. § 31A-3 (the slayer statute)" or "(2) the common law rule that no one may profit from their own wrongdoing." State Farm Life Ins. Co. v. Allison, 493 S.E.2d 329, 330 (1997) (citing Quick v. United Benefit Life Ins. Co., 213 S.E.2d 563, 569 (1975). This comports with the policy of North Carolina "that no person shall be allowed to profit by his own wrong." N.C. GEN. STAT. § 31A-15.

<u>Instead of deciding whether North Carolina common law prevents Defendant Long from receiving the TLIA funds at this time, the Court requests the parties to submit further briefing on this issue at the summary judgment stage.</u>

**b. Defendant Lightner and the Estate's Motion for Partial Summary Judgment**

Before the Court ruled on the Motion to Dismiss, Defendant Lightner and the Estate moved for Partial Summary Judgment. (Doc. No. 35). Since this Court has dismissed the wrongful death crossclaim, the Motion for Partial Summary Judgment on the wrongful death crossclaim is DENIED AS MOOT. To the extent Defendant Lightner and the Estate move for Partial Summary Judgment on the declaratory judgment action, this Court awaits final ruling on the common law issue until the parties submit further briefing.

13

**c. Relief**

Defendant Long requested this Court limit "any monetary relief or damages to the interpleader funds which have been deposited with the Court by Midland." (Doc. No. 30-1, p. 19). Defendant Lightner and the Estate argue Defendant Long's request "eliminates the statutory rights" to damages granted by the state wrongful death action. (Doc. No. 33, p. 19). Since the statute of limitations bars the wrongful death claim, there is no statutory right to damages. Therefore, only the interpleader funds remain in dispute.

## IV. CONCLUSION

For the foregoing reasons, Defendant Long's Motion to Dismiss Crossclaims, (Doc. No. 30), is GRANTED IN PART and DENIED IN PART, and Defendant Lightner and the Estate's Motion for Partial Summary Judgment, (Doc. No. 35), is DENIED AS MOOT. The parties are ORDERED to submit cross motions for summary judgment by August 20, 2021, and cross responses by August 27, 2021. The Court will not entertain replies.

IT IS SO ORDERED.

Signed: August 6, 2021

_____
Frank D. Whitney
United States District Judge